IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBERT LONG, *individually and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Civil Action No.  3:23cv435 (RCY) |
| KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V., | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Koninklijke Luchtvaart Maatschappij, N.V.'s Motion to Transfer to the Southern District of New York ("Motion to Transfer," ECF No. 9).  The Motion has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will deny Defendant's Motion to Transfer.

**I. BACKGROUND**

In 2019, Defendant Koninklijke Luchtvaart Maatschappij, N.V. ("Defendant" or "KLM") introduced its "Fly Responsibly" initiative.  Compl. ¶¶ 16, 18, ECF No. 1.  This initiative advertised KLM as an airline working to become more environmentally sustainable.  *See id.* at ¶¶ 15–21.  In support of its "Fly Responsibly" initiative, KLM instituted a "Climate Action Plan . . . based on the Science Based Targets Initiative . . .  to limit global warming to less than 1.5 ºC."  *Id.* at ¶ 17.  As part of this initiative, "KLM entices customers to 'offset' and 'reduce' the

environmental impact of flying through its CO2ZERO program . . . [which] includes . . . sustainable aviation fuels." *Id.* at ¶¶ 20–21.  KLM advertises the "Fly Responsible Program" directly to consumers.  *Id.* at ¶ 16.

In the summer of 2022, Plaintiff Robert Long ("Plaintiff" or "Long") flew from Amsterdam to Las Vegas on a KLM-operated flight.  *Id.* at ¶ 53.  Plaintiff claims to be "concerned about effects of climate change," and "realizes that flying requires emission of carbon dioxide."  *Id.* at ¶¶ 51–52.  As such, Plaintiff "chose KLM in part because of its commitments and actions to limit the effects of climate change."  *Id.* at ¶ 52.  Specifically, Plaintiff alleges he "relied on the above-identified words, promises, commitments, plans, and pictures by KLM about its effort to limit the effects of climate change when he purchased his flight," that he "chose between KLM and other airlines which did not tout their environmental attributes," and that he "paid more for his flight on KLM than he would have paid absent its false and misleading statements and omissions."  *Id.* at ¶¶ 54–56.  Per the Complaint, Plaintiff was misled by KLM's Fly Responsibly initiative, as the airline's carbon offsetting is insufficient to meet its stated goals, and KLM has generally "not kept its promise" to meet its stated environmental goals.  *Id.* at ¶¶ 22–34.

Notably, a near-identical proceeding was recently dismissed in the Southern District of New York ("SDNY"):  *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA), 2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023) (hereinafter, "*Dakus*," or the "*Dakus* action").  In *Dakus*, the plaintiff, Kandas Dakus ("Dakus"), made allegations against KLM largely identical to those made in the instant complaint.  *Compare* Compl. *with Dakus* First Am. Compl., ECF No. 13.  Indeed, the two complaints even share the same typographical error.  *See* Compl. § 2 *with Dakus* First Am. Compl. § 2.  In its Motion to Dismiss in *Dakus*, KLM "brought a factual challenge to [Dakus'] jurisdictional allegations."  *Dakus*, 2023 WL 5935694 at *2.  This factual challenge

2

undermined Dakus' ability to satisfy Article III standing requirements, compelling dismissal of her case on jurisdictional grounds.[1]  *Id.* at *4–6.  The *Dakus* court therefore had no occasion to address any of the substantive arguments made in KLM's concurrent Rule 12(b)(6) Motion to Dismiss.  *See id.* at *4–6.  While the court granted Dakus leave to amend and refile her complaint within thirty days, she has not timely done so.  *See id.* at *6; Docket, *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA) (S.D.N.Y. filed Sept. 17, 2022).  Therefore, as of today, the only remaining proceedings in *Dakus* pertain to potential sanctions for Dakus' attorney, Spencer Sheehan.[2]  *See generally* Docket, *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA) (S.D.N.Y. filed Sept. 17, 2022).

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on July 7, 2023, asserting various causes of action on behalf of himself and a class of persons in Virginia.  *See* Compl. ¶¶ 60, 68–77.  Defendant filed a Motion to Transfer on July 27, 2023, arguing that this matter should be transferred to SDNY, where *Dakus* was still pending.  *See* Mot. Transfer 1–2, ECF No. 9; Def.'s Mem. Supp. Mot. Transfer ("Mem. Supp.") 7–9, ECF No. 10.[3]  Plaintiff filed a Brief in Opposition to Defendant's Motion to Transfer on August 10, 2023, arguing against transfer.  *See* Pl.'s Brief Opp'n Mot. Transfer ("Pl.'s Opp'n")

---

[1] More specifically, KLM asserted that (1) a third-party organization booked Dakus' ticket, (2) airline information was provided to customers only *after* payment was remitted, and (3) Dakus solicited donations to fund her ticket.  *Dakus*, 2023 WL 5935694 at *2.  Based on these allegations, KLM argued that Dakus did not herself choose KLM as her airline, that she did not know KLM had been selected before she paid for her flight, and that she may not have paid for her ticket at all.  *Id.*  Dakus did not initially address KLM's factual challenge in her opposition, but after the Court gave her additional leave to do so, she eventually made factual allegations and arguments inconsistent with those in her initial complaint.  *Id.*  In particular, Dakus argued that, while she was not initially aware that her flight would be with KLM, she was informed of it prior to her travel.  *Id.*  At that point, she contended she learned of KLM's promises, and relied on KLM's promises and commitments in her decision to not cancel her trip (for which she would apparently receive a refund).  *Id.*

[2] Mr. Sheehan also happens to be among Plaintiff's counsel in this matter.

[3] For these and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

3

5–11, ECF No. 18.  Defendant filed its Reply in Support of Motion to Transfer on August 16, 2023.  ECF No. 19.  On September 12, 2023, the SDNY district court dismissed the *Dakus* action for lack of standing.  *See Dakus*, 2023 WL 5935694 at *3–6.  Because *Dakus* was dismissed on jurisdictional grounds, the *Dakus* court did not reach any substantive arguments for or against dismissal.  *See id.*  Following the *Dakus* dismissal, Defendant filed a Notice in Support of its Motion to Transfer, arguing that the case should still be transferred to the SDNY, even though *Dakus* was dismissed.  *See* KLM's Not. Supp. Mot. Transfer ("Not. Supp.") 1–3, ECF No. 20.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a civil action may be transferred to another district or division if "(1) the claims might have been brought in the transferee forum, and (2) [the] interest of justice and convenience of the parties and witnesses justify transfer to that forum."  *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (quoting *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).  The decision to transfer a case rests in the district court's sound discretion.  *Koh*, 250 F. Supp. 2d at 630.  The party seeking transfer "bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer."  *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (internal citations and quotations omitted) (emphasis in original).  In deciding a motion to transfer, the pleadings need not be accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations.  *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (citing *Sucampo Pharm., Inc. v. Astellas Pharm., Inc.*, 471 F.3d 544, 549–50 (4th Cir. 2006)).

A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry.  *Hill-Green v. Experian Info. Sols.*, No. 3:19CV708, 2020 WL 5539042, at *4 (E.D.

Va. Sept. 15, 2020). First, the court must determine whether the claims at issue could have originally been brought in the transferee forum. *Id.* Thus, "a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh*, 250 F. Supp. 2d at 631. Second, a court must conduct a balancing test to determine whether transfer is warranted, considering the following four factors: (1) plaintiff's choice of forum; (2) the convenience of the parties; (3) witness convenience and access; and (4) the interest of justice. *Heinz Kettler*, 750 F. Supp. 2d at 667 (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).

## IV. DISCUSSION

Defendant seeks to transfer this action to the Southern District of New York ("SDNY") under the first-to-file doctrine and 28 U.S.C. § 1404(a). Def.'s Mot. Transfer 1, ECF No. 9; *see* Mem. Supp. 9, ECF No. 10. Plaintiff argues that transfer should be denied because (1) the first-to-file rule is inapplicable on these facts, and (2) the relevant § 1404(a) factors counsel against transfer. *See* Pl.'s Opp'n 6–11, ECF No. 18. Ultimately, the Court agrees that transfer is inappropriate under these circumstances, as the § 1404(a) factors do not weigh strongly in favor of transfer. *See Heinz Kettler GMBH & Co. v. Razor USA, LLC,* 750 F. Supp. 2d 660, 667 (E.D. Va. 2010).

### A. First-to-File Rule

Defendants initially invoke the first-to-file rule as an independent basis for transferring this case. *See* Def.'s Mem. Supp. 9 ("[T]his case should be transferred to the S.D.N.Y. under the first-to-file rule, or in the alternative, under 28 U.S.C. § 1404."). However, "the first-to-file rule does not provide standalone authority to transfer a case." *SZ DJI Tech. Co. v. Bell Textron, Inc.*, No. 1:23CV931 (DJN), 2023 WL 6541848, at *3 (E.D. Va. Oct. 6, 2023). Rather, the doctrine serves

as just one factor in analyzing transfer under § 1404(a). *See Byerson v. Equifax Info. Servs., LLC*, 465 F. Supp. 627, 635 (E.D. Va. 2006) (stating that the first-to-file rule is "properly considered as [a] component[] of the interest of justice" factor in the § 1404(a) transfer analysis); *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (applying the first-to-file rule when analyzing the transfer factors). Accordingly, the Court will analyze Defendants' transfer motion under the statutory framework provided by Congress. The Court's assessment of the "interest of justice factor" will, however, be partially informed by consideration of the first-to-file rule.

**B. Transfer Under 28 U.S.C. § 1404(a)**

Turning to the § 1404(a) analysis, an action may be transferred to another district or division if (1) the claims could have originally been brought there, and (2) the interests of justice and convenience of the parties and witnesses justify transfer to that forum." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (quoting *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)). Here, neither party disputes the first prong. Instead, both parties focus their argument on the second prong—§ 1404(a)'s convenience factors. Because the circumstances here do not clearly favor transfer, the Court will deny Defendant's Motion to Transfer under § 1404(a).

1. <u>Plaintiff Could Have Filed This Case in the Southern District of New York</u>

The parties correctly do not dispute that Plaintiff could have brought his claims in SDNY. *See* Def.'s Reply Supp. Mot. Transfer ("Reply") 7, ECF No. 19 (noting that Plaintiff's opposition implicitly conceded that the action could have been brought in SDNY). Therefore, Defendant satisfies the first prong of the § 1404(a) analysis.

Defendant, a Dutch corporation headquartered in the Netherlands, has its principal place of business in the United States in New York, New York. Compl. ¶¶ 44–45; Mot. Transfer

("Mot.") 2, ECF No. 9; Reply 7. Therefore, Defendant is "at home" in New York, and subject to personal jurisdiction there. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). And because Defendant is subject to personal jurisdiction in SDNY, it can be said to reside in that jurisdiction, 28 U.S.C. § 1391(c)(2), meaning that district could be a proper venue. *See* 28 U.S.C. § 1391(b)(1). Thus, Defendant has sufficiently shown that this action could have been brought in SDNY, satisfying the first prong of the § 1404(a) analysis.[4] *See Va. Innovation Scis., Inc.*, 928 F. Supp. 2d at 867.

2. The Balance of Convenience Factors Weigh Against Transfer

Under the second prong of the § 1404(a) analysis, the Court must consider four factors: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) witness convenience and access; and (4) the interest of justice. *Heinz Kettler*, 750 F. Supp. 2d at 667 (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). Considered together, these factors do not weigh "*strongly* in favor of transfer," compelling the denial of Defendant's Motion. *See id.* (emphasis in original).

    a. Plaintiff's Choice of Forum

A plaintiff's choice of forum is typically entitled to significant deference. *See Byerson v. Equifax Info. Servs.*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006). Courts do, however, give less weight to the plaintiff's choice of forum in class actions because "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). But if the plaintiff's choice of forum is "amenable to inexpensive discovery and trial because . . . [it] is home both to

---

[4] Indeed, as Defendant notes, Plaintiff's counsel filed the *Dakus* action against KLM in the SDNY. Relevantly, the *Dakus* action forms the basis of Defendant's first-to-file argument, as discussed *infra*.

the [p]laintiffs and key non-party witnesses," the plaintiff's choice remains "entitled to significant weight that is not materially diminished merely because the case is a class action." *Byerson*, 467 F. Supp. 2d at 633

Defendant argues that Plaintiff's "choice of forum should be afforded little deference." Mem. Supp. 23. Defendant first contends that, because this is a class action, Plaintiff's forum choice is less relevant. *Id.* Next, Defendant asserts that Plaintiff's choice of forum is entitled to even less weight because this district apparently has "little connection to the underlying litigation," insofar as (1) Plaintiff did not fly out of this district, and (2) none of Defendant's employees in this district are involved in marketing or other corporate strategies and actions. *Id.* at 24. Finally, Defendant argues that there are no key non-party witnesses in this district. *Id.* In response, Plaintiff briefly contends that (1) his choice of forum should still be entitled to substantial weight, and (2) if his choice of forum is discarded, it would severely inconvenience him. Pl.'s Opp'n 9.

While Plaintiff's arguments are admittedly thin, his legal position is indeed correct. Plaintiff filed this action in his home forum, and brings class claims on behalf of a Virginia-only class. Compl. ¶ 60, ECF No. 1 ("Plaintiff seeks certification . . . of the following class: . . . All persons in Virginia who bought flights on KLM during the statutes of limitations for each cause of action alleged."). This likely means that the Eastern District of Virginia—as one of just two districts in the state—is home to a substantial portion of the class members. *See Hill-Green v. Experian Info. Sols.*, 2020 WL 5539042, at *7 (E.D. Va. Sept. 15, 2020). And while many of the underlying events may have occurred in another forum, a review of the relevant case law reveals that courts typically still grant at least *some* deference to the plaintiff's forum choice under similar circumstances. *See, e.g., Hill-Green*, 2020 WL 5539042 at *6–7 (giving some deference to the plaintiff's forum choice where (1) she resided in the forum state, (2) she represented a class of

members comprised of individuals from the forum state, and (3) at least some of events that gave rise to her complaint occurred in the forum state); *Dyer v. Air Methods Corp.*, No. 9:20-CV-2309-DCN, 2020 WL 7398711, at *4 (D.S.C. Dec. 17, 2020) (same); *Wenzel v. Knight*, No. 3:14CV432, 2015 WL 222179 (E.D. Va. Jan. 14, 2015) (deferring to plaintiff's forum choice in putative class action, even where another forum presumably would have also been proper).

The instant matter is indistinguishable from the above cases. Plaintiff is a resident of the state and district in which he filed this suit. Plaintiff seeks to represent a class of citizens from that very same state. And finally, a significant portion of the relevant actions apparently occurred in that state and district: Plaintiff was exposed to the relevant marketing in Virginia; Plaintiff purchased a ticket in reliance on that marketing in Virginia; and Plaintiff discovered that the marketing he purportedly relied upon was allegedly misleading while in Virginia. Therefore, while Defendant correctly points to certain factors that do in fact support transfer (such as the presence of Defendant's United States headquarters in SDNY), the Court will afford Plaintiff's choice of forum *some* deference. *See Hill-Green*, 2020 WL 5539042 at *7 ("Clearly, the location of [defendant's] headquarters weighs toward transfer. The Court will not afford [plaintiff's] choice of forum great deference, but will afford it some deference.") In turn, Plaintiff's choice of forum weighs slightly against transfer.

### b. The Convenience of the Parties

In assessing the relative convenience of the parties, courts must consider "ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process." *Byerson*, 467 F. Supp. 2d at 633. "When weighing this factor, 'the logical starting point is a consideration of the residence of the parties.'" *King v. Corelogic Credco, LLC*, No. 3:17cv761, 2018 WL 2977393, at *5 (E.D. Va. June 13, 2018). Importantly, "transfer is not appropriate where

it will only serve to shift the balance of inconvenience from one party to the other." *Heinz Kettler*, 750 F. Supp. 2d at 668.

Defendant argues that the convenience of the parties supports transfer for several reasons. First, Defendant notes that "the gravamen of [Plaintiff's] complaint is a challenge to [Defendant's] representations about its sustainability efforts." Mem. Supp. 25. Defendant then points out that "evidence relating to these efforts—including relevant documents and witnesses—is likely to exist in either New York City or the Netherlands, not the [Eastern District of Virginia]." *Id.* Defendant next argues that the need for compulsory process weighs in favor of transfer, because some non-party witnesses "are much more likely to be located in New York, outside of the subpoena power of the [Eastern District of Virginia]." *Id.* In response, Plaintiff raises essentially the same argument he already raised on the previous factor: "If the Plaintiff's choice of forum is discarded, he may have to travel to New York to be deposed, attend hearings and trial. For the same reason, *residence of parties*, access to evidence and availability of witnesses and practical issues affecting a trial also supports this forum." Pl.'s Opp'n 9 (emphasis added). Plaintiff also notes that he is an individual litigating a consumer claim on behalf of a putative class, while Defendant is a global company. *Id.* For these reasons, Plaintiff argues that this factor weighs against transfer. *Id.*

Defendant has not met its burden to show that the parties' convenience weighs in favor of transfer here. Looking first to the parties' respective residences, Plaintiff resides in the Eastern District of Virginia. Compl. ¶ 42–43. And if a class were certified, the class members would also reside in Virginia. *See* Compl. ¶ 60 (noting that Plaintiff wishes to certify a "Virginia Class" of "[a]ll persons *in Virginia* who bought flights on [Defendant's airline]") (emphasis added). Conversely, Defendant's principal place of business in the United States is located in New York,

New York, within SDNY.[5] Thus, to present its case, each party would be inconvenienced by having to travel to the other's chosen forum. *See Hill-Green*, 2020 WL 5539042 at *8.

Next, considering the ease of access to sources of proof, courts have recognized that when information is available electronically, this "factor is de minimis and not entitled to substantial weight." *Id.* (citing *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2015 WL 1800274, at *4 (E.D. Va. Apr. 16, 2015); *King*, 2018 WL 2977393, at *6). Defendant's indication that "[d]ocuments and electronic information concerning [Defendant's] environmental initiatives and related marketing efforts are primarily located in New York or the Netherlands" is therefore largely immaterial for purposes of this inquiry. *See* Caron Decl. ¶ 9, ECF No. 10-2. These documents and electronically stored information can easily be transported to, or otherwise accessed from within, this district.

Lastly, the cost of obtaining witness testimony and the availability of compulsory process considerations do not weigh heavily in either direction. On one side is Plaintiff, who resides in Virginia and would have to travel to New York (and incur significant costs) should this case be transferred. Moreover, if this matter becomes a class action, other members of the Virginia-only class may provide relevant evidence or otherwise wish to participate. As such, there is the potential that such individuals would also have to travel out-of-state to do so.

On the other side is Defendant, which avers that it has only two employees in Virginia, both of whom are uninvolved in the sorts of initiatives at issue here. *Id.* at ¶ 6–8. Rather, the employees involved in the relevant sustainability initiatives and marketing efforts work or reside in either New York or the Netherlands. *Id.* at ¶ 6. Defendant also makes general claims that its potential witnesses include former employees or employees of third-party entities, who are also

---

[5] Defendant's global headquarters is in Amstelveen, North Holland, Netherlands.

11

more likely to reside in New York than Virginia. *Id.* at ¶ 11. It has not been asserted, however, that any of these witnesses would refuse to travel to the Eastern District of Virginia to testify. *See generally* Caron Decl.; *see also Hill-Green*, 2020 WL 5539042 at *8. Moreover, to the extent that these employees (or former employees) reside in the Netherlands, the Court sees no material difference in "convenience" in being required to travel to Virginia rather than New York.[6] Likewise, if a former employee is outside the range of compulsory process of this Court because they reside in the Netherlands, they would be similarly outside the range of compulsory process in SDNY. *See* Fed. R. Civ. P. 45(c)(1). This leaves just a subset of potential witnesses—non-party witnesses located in New York—whose convenience concerns are actually material for the purposes of this inquiry.

At bottom, neither forum is wholly convenient for either party. And for the reasons outlined above, it is clear that transferring this case to SDNY would merely "serve to shift the balance of inconvenience" from Defendant to Plaintiff. *See Heinz Kettler*, 750 F. Supp. 2d at 668. For that reason, this factor also weighs against transfer.

### c. The Convenience of Witnesses

In terms of witness convenience, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of

---

[6] Defendant argues that its employees in the Netherlands will be inconvenienced if this matter remains in this Court because "there does not appear to be direct travel options between Europe and Richmond as compared to New York City." In support of this argument, Defendant cites *Zhongshan Rising Dragon Foreign Tech. Co. v. B&S Plastics Inc.*, an unreported, out-of-circuit district court opinion. In *Zhongshan Rising Dragon*, the court observed that the lack of direct flights from China to the Eastern District of Tennessee rendered it "slightly more convenient" for the plaintiff to litigate in California. *Zhongshan Rising Dragon Foreign Tech. Co. v. B&S Plastics Inc.*, No. 3:10-CV-554, 2012 WL 13018281 (E.D. Tenn. June 21, 2012). Even if the Court were to adopt similar reasoning, it is not clear that it would be sufficient to find this factor weighs in favor of transfer, because such a transfer would still largely serve only to "shift the balance of inconvenience" from Defendant to Plaintiff. *See Heinz Kettler*, 750 F. Supp. 2d at 668.

inconvenience." *Heinz Kettler*, 750 F. Supp. 2d at 668. "Typically, . . . a distinction is drawn between party and non-party witnesses." *Mullins v. Equifax Info. Servs., LLC*, No. CIV.A. 3:05CV888, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006). "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Id.* (citation omitted). "The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer." *Id.* (citation omitted). Importantly, "[w]hen the appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important." *Id.* at *8 (internal quotation marks and citation omitted).

Defendant has indeed proffered some details regarding its witnesses and their potential testimony. First, Defendant notes that ""[t]he testimony of KLM employees is likely to be the great majority of lay witness testimony central to the claims in this case." Mem. Supp. 26–27. Defendant has also submitted a declaration generally outlining its other potential witnesses. In relevant part, Defendant states that "[Defendant's] potential witnesses include former . . . employees or employees of third-party entities doing work with KLM." Caron Decl. ¶ 11. Defendant also contends that the two employees it does have in Virginia will *not* be witnesses in this case because "they are not knowledgeable regarding [Defendant's] environmental initiatives." Mem. Supp. 28. For his part, Plaintiff has not proffered any information regarding intended witnesses.

Based on the above, the Court concludes that the witness convenience factor weighs slightly in favor of transfer. Beginning with Defendant's employee witnesses, the Court "presume[s they are] . . . more willing to testify in a different forum." *Mullins*, 2006 WL 1214024

13

at *7. Moreover, as employees, their "appearance . . . [could] be secured regardless of the forum's location through court order or persuasion by [their] employer who is a party to the action." *Id.* at *8. Defendant's employees are therefore less relevant for the purposes of this inquiry. *See id.* at *7–8. That said, Defendant also references another category of potential witnesses comprised of former employees or employees of third-party entities doing work with KLM. However, Defendant does not provide much information regarding the location of these witnesses or the content of their testimony. Instead, Defendant just references their existence and states they are "more likely" to be in New York than Virginia. *See, e.g.,* Caron Decl. ¶ 11; Mem. Supp. 25–26. Without more details, this Court is unable to thoroughly "assess the materiality of evidence and the degree of inconvenience" as to these potential non-party witnesses. *Heinz Kettler*, 750 F. Supp. 2d at 688.

In any event, Defendant confirms that its *key* witnesses will be current employees. *Compare* Caron Decl. ¶ 11 ("[Defendant's] potential witnesses include former KLM employees or employees of third-party entities doing work with KLM") *with* Mem. Supp. 26–27 ("The testimony of KLM employees is likely to be the great majority of lay witness testimony central to the claims in this case . . . . As a result, the majority of key witnesses will be inconvenienced if required to attend trial in the E.D. Va. versus the S.D.N.Y."). And as outlined above, employee (i.e., party) witnesses are accorded less weight in this inquiry.

For his part, Plaintiff fails to provide any real information regarding intended witnesses. *See generally* Pl.'s Opp'n. Instead, Plaintiff focuses on the inconvenience *he* will face as a potential witness in this matter. Pl.'s Opp'n 9–10. But as noted above, party witnesses are accorded less weight in this inquiry. *Mullins*, 2006 WL 1214024 at *7–8. Such concerns are more comfortably situated within the parties' convenience factor, and are accordingly discussed above.

14

In sum, both parties argue they (inclusive of employees) will be inconvenienced if they do not get their preferred forum. Only Defendant provides at least some information about the more relevant non-party witnesses. Even though Defendant did not provide this Court with detailed information about the location or intended testimony of these witnesses, their mere existence moves the needle slightly in favor of transfer on the witness convenience factor.[7]

### d. The Interests of Justice

The interests of justice is the final factor this Court must consider under the second prong of the § 1404(a) analysis. *See Heinz Kettler*, 750 F. Supp. 2d at 667. This "factor 'encompasses public interest factors aimed at systemic integrity and fairness.'" *Id.* at 669 (quoting *Byerson*, 467 F. Supp. 2d at 635). "The most prominent elements of system integrity are judicial economy and the avoidance of inconsistent judgments." Fairness, on the other hand, "is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of the applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Additionally, as noted above, the first-to-file rule is "properly considered as a component of the interest of justice" inquiry. *See Byerson*, 465 F. Supp. 2d at 635. The Court will therefore first discuss the applicability of the first-to-file rule, before rounding out its interests of justice analysis with the remaining considerations.

### i. The "First-to-File" Rule

Under the first-to-file rule, "when multiple suits are filed in different [f]ederal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 901, 914 (E.D. Va. 2019) (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982)).

---

[7] This is particularly true where, as here, Plaintiff (1) does not address Defendant's claim of non-party witness inconvenience, and (2) does not raise non-party witness inconvenience concerns of its own.

The first-to-file rule exists primarily to avoid duplicative litigation and conserve judicial resources. *See Byerson*, 467 F. Supp. 2d at 635; *SZ DJI Tech. Co. v. Bell Textron, Inc.*, No. 1:23CV931 (DJN), 2023 WL 6541848, at *3 (E.D. Va. Oct. 6, 2023). Importantly, "the Fourth Circuit 'has no unyielding "first-to-file" rule.'" *Gibbs*, 368 F. Supp. 3d 901, 914 (citing *Victaulic Co. v. E. Indus. Supplies, Inc.*, No: 6:13-01939, 2013 WL 6388761, at *2 (D. S.C. Dec. 6, 2013) (quoting *CACI Int'l Inc. v. Pentagen Techs. Int'l Ltd.*, 1995 WL 679952, at *6 (4th Cir. 1996) (citation omitted))). While the first-filed suit often receives priority, the "first-to-file rule 'is not absolute and is not to be mechanically applied.'" *See id.* (quoting *Victaulic Co.*, 2013 WL 6388761 at *2 (quoting *Harris v. McDonnell*, No. 5:13-cv-000777, 2013 WL 5720355, at *3 (W.D. Va Oct. 18, 2013))). Ultimately, "the decision to apply the first-to file rule is an 'equitable determination that is made on a case-by-case, discretionary basis.'" *Gibbs*, 368 F. Supp. 3d at 914 (quoting *Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc.*, No. 6:12cv52, 2013 WL 1164835, at *4 (W.D. Va. Mar. 20, 2013)).

Given the present posture of the first-filed case, *Dakus*, and in view of the principles outlined above, the Court declines to apply the first-to-file rule. Preliminarily, other courts within this circuit have discretionarily declined to apply the first-to-file rule where the first-filed case is no longer pending. *See Hill-Green*, 2020 WL 5539042 at *11 n.17 ("Although the first-to-file rule may have been applicable while the Central District of California considered the *Price* case, because *Price* has settled, the first-to-file rule no longer informs the [c]ourt's analysis."). Here, as in *Hill-Green*, the relevant proceedings in the first-filed case are no longer pending.[8] *See id.* While the first to file rule therefore *may* have been applicable while *Dakus* was pending, its utility is

---

[8] As discussed elsewhere, the only remaining proceedings in *Dakus* pertain to potential sanctions for the plaintiff's attorney, Mr. Sheehan. *See generally* Docket, *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA) (S.D.N.Y. filed Sept. 17, 2022).

sharply diminished—if not destroyed entirely—by SDNY's justiciability-related dismissal of *Dakus*.

Moving on, other equitable considerations likewise weigh against application of the first-to-file rule. The plaintiffs and classes are dissimilar, as are the questions presently before the courts—i.e., the substance of the claims (here) versus attorney sanctions following a justiciability-based dismissal (SDNY). Moreover, the Court is not persuaded that the rationale underlying the first-to-file rule maintains the same force where, as here, the first-filed action is dismissed on non-substantive grounds. Under such circumstances, it is unlikely that transfer would serve the first-to-file rule's purposes of avoiding duplicative litigation and conserving judicial resources. *See Byerson*, 467 F. Supp. 2d at 635. The *Dakus* court never had to reach the substance of the claims or otherwise gain "familiarity with . . . the applicable law," *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d, 768, 784 (D. Md. 2009), instead dismissing the case before even considering KLM's more substantive 12(b)(6) Motion to Dismiss. *See generally Dakus*, 2023 WL 5935694. Therefore, any litigation taking place here would hardly be duplicative of what occurred in the SDNY. For the same reason, transferring the case would not conserve judicial resources. Both this Court and the district court presiding over *Dakus* have, by now, obtained familiarity with the general facts at issue. Any transfer would merely shift the remaining burden from one court to another. Such a shift does not fully comport with the rationale behind the first-to-file rule.

To be sure, the first-to-file rule may well be applicable where the first-filed case was substantively dismissed (i.e., on a 12(b)(6) motion). *See, e.g., Jasper*, 2023 WL 4492354, at *1, *4–6 (applying the first-to-file rule where the first-filed case had been dismissed on a 12(b)(6) motion). That is because the rule's purposes—avoiding duplicative litigation and conserving resources—are still served under such circumstances. Presumably, the first court would have had

to (1) review the alleged facts and applicable law, and (2) issue a ruling indicating how the law applies to those facts. Transferring cases involving substantially similar issues and parties to that court could therefore potentially avoid duplicative litigation and conserve resources. The same simply cannot be said where, as here, the first case was dismissed on strictly jurisdictional or procedural grounds.

### ii. *Systemic Integrity and Fairness*

The remaining considerations under the interests of justice factor "encompass[] public interest factors aimed at systemic integrity and fairness." *Heinz Kettler*, 750 F. Supp. 2d at 669 (quoting *Byerson*, 467 F. Supp. 2d at 635). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* Fairness, on the other hand, "is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (internal citations omitted). These considerations ultimately weigh against transfer, in large part because *Dakus* has been dismissed. In this regard, *Hill-Green* is instructive.

In *Hill-Green*, the Defendant moved to transfer, invoking both § 1404(a) and the first-to-file rule. *See Hill-Green*, 2020 WL 5539042 at *11. Specifically, the defendant argued that transfer to the Central District of California would promote judicial economy, given that court's two-year handling of the first-filed matter, *Price*. *See id.* The court, however, disagreed:

> Although *Price* may have addressed similar claims, it has since settled. . . . Experian's argument that the benefit of hearing by a district judge . . . who might "guide parties to a similar" settled "resolution" cannot prevail. . . . First, absent consolidation, it is not certain that this case would transfer automatically to Judge Carter. Second, the *Price* case did not resolve *any* class claims . . . . Neither the interest of justice nor judicial economy counsel transfer of this Virginia-based claim and Virginia-only potential class claim to the Central District of California. . . . Therefore, judicial economy does not necessitate transfer here. Because Hill-Green

> brings her claims on behalf of only a Virginia class and herself, a Virginia resident, the "interest in having local controversies decided at home" and the "unfairness with burdening forum citizens with jury duty" weigh against transferring this matter to the Central District of California. . . . Certainly, economy is served by a Virginia court managing a Virginia class. For these reasons, Experian has failed to show that the fourth factor, the interests of justice, necessitates transfer.

*Id.* at 12. The same reasoning applies with force here.

Preliminarily, the first-filed case here has been dismissed on non-substantive justiciability grounds. See *Dakus*, 2023 WL 5935694 at *4–6. Barring any unexpected factual revelations akin to those in *Dakus*, it is unlikely this matter will face a similar disposition. In turn, judicial economy would not be served by transferring this case to a court that has yet to familiarize itself with the substantive arguments that will presumably arise in this matter, let alone familiarize itself, as a court in the state of New York, with Virginia law, upon which Plaintiff rests certain of his claims. For this same reason, there is no danger of inconsistent judgments. Again, the *Dakus* court only addressed justiciability, not any of the underlying substantive claims that will seemingly need to be addressed here.

Next, as in *Hill-Green*, it is not even clear that this matter would be assigned upon transfer to Judge Abrams, who presided over *Dakus*. See *Hill-Green*, 2020 WL 5539042 at *12. Rather, the matter would be transferred to SDNY generally. Moreover, the Plaintiff here—like the plaintiff in *Hill-Green*—is a Virginia citizen bringing claims only on behalf of himself and others in Virginia. *See id.* In turn, "the 'interest in having local controversies decided at home' and the 'unfairness of burdening forum citizens with jury duty' weigh against transferring this matter" to SDNY. *See id.* Economy would instead be better served by a Virginia court managing a Virginia class. *See id.* And as Defendant concedes, "a general review of docket conditions in the Eastern District of Virginia and [SDNY] suggests that this case may be resolved faster in [the former]."

Mem. Supp. 21. For all these reasons, the interests of justice would not be furthered by transferring this matter to SDNY.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the circumstances here ultimately counsel against transferring this matter to the Southern District of New York. The Court will therefore deny Defendant's Motion to Transfer.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: January 2, 2024