IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBERT LONG, *individually and on behalf of all others similarly situated*, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No.  3:23cv435 (RCY) |
| KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V., ) ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Koninklijke Luchtvaart Maatschappij, N.V.'s Motion to Dismiss (ECF No. 26).  The Motion has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant Defendant's Motion to Dismiss.

**I. BACKGROUND**

Koninklijke Luchtvaart Maatschappij, N.V. ("Defendant" or "KLM") operates KLM Royal Dutch Airlines.  Compl. ¶ 1, ECF No. 1.  KLM is the "world's oldest airline," and provides "numerous international routes from United States airports."  *Id.* ¶¶ 46–47.  As a leader in the airline industry, KLM is "committed to reducing the effects of climate change."  *Id.* ¶ 48. "[R]ecogniz[ing] the urgent need to limit global warming," KLM introduced its "Fly Responsibly" initiative in 2019.  *Id.* ¶ 16.  By way of this initiative, KLM committed itself "to the targets defined

in the Paris Climate Agreement." *Id.* ¶¶ 16–17. To that end, KLM committed to reducing its emissions "by 12% in 2030 [as] compared to 2019." *Id.* ¶ 18.

In support of its "Fly Responsibly" initiative, "KLM entices customers to 'offset' and 'reduce' the environmental impact of flying through its CO2ZERO program." *Id.* ¶ 20. The CO2ZERO program includes reforestation projects in Panama as well as the use of sustainable aviation fuels ("SAFs"). *Id.* ¶ 21. Plaintiff avers, however, that these initiatives are wholly insufficient for KLM to meet its stated environmental goals. *See id.* ¶¶ 15–34. As a result, Plaintiff contends that KLM's "Fly Responsibly" marketing misleads consumers. *See, e.g.*, *id.* ¶¶ 25, 28, 30, 33–34. Specifically, Plaintiff avers that (1) there is "[n]o credible evidence that purchasing carbon credits is equivalent to negating the environmental effects of flying such that a flight could be described as 'CO2 neutral' and 'CO2ZERO' as [KLM] does,"[1] *id.* ¶ 24; (2) KLM's "use of offsets . . . via reforestation projects is misleading because a tree storing CO2 is a short-lived and unsustainable form of storage," *id.* ¶ 28; (3) KLM's focus on SAFs is misleading because SAFs have a negligible effect on reducing CO2 emissions while flying and only comprise .18% of the total fuel used by KLM anyway, *id.* ¶¶ 30–31; and (4) KLM "contributes to the current pathway" in which "there is a very high probability" that the Paris Climate Agreement goals will not be met, *id.* ¶ 34.

In the summer of 2022, Plaintiff Robert Long ("Plaintiff" or "Long") flew from Amsterdam to Las Vegas on a KLM-operated flight. *Id.* at ¶ 53. Plaintiff claims to be "concerned about effects of climate change," and "realizes that flying requires emission of carbon dioxide." *Id.* at ¶¶ 51–52. Plaintiff thus "chose KLM in part because of its commitments and actions to limit the effects

---

[1] Per Plaintiff, "[c]arbon offsetting is based on the idea that you can reduce or remove CO2 from the atmosphere by planting and growing trees which absorb CO2." Compl. ¶ 22. KLM apparently seizes upon this idea via its CO2ZERO program by suggesting that, because of its reforestation projects and use of SAFs, ticket purchases will "offset" and "reduce" the environmental impact of flying. *Id.* ¶¶ 20–21.

2

of climate change." *Id.* at ¶ 52.  More concretely, Plaintiff alleges that he "relied on the above-identified words, promises, commitments, plans, and pictures by KLM about its effort to limit the effects of climate change when he purchased his flight," that he "chose between KLM and other airlines which did not tout their environmental attributes," and that he "paid more for his flight on KLM than he would have paid absent its false and misleading statements and omissions." *Id.* ¶¶ 54–56.  Notably, Plaintiff does not include any specific allegations regarding where he purchased his ticket, how much he paid, whether he paid for carbon offsets or SAFs, and what contractual terms were apparently agreed upon.  *See generally* Compl.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on July 7, 2023, asserting various causes of action on behalf of himself and a class of persons in Virginia.  *See* Compl. ¶¶ 60–77.  On February 16, 2024, Defendant filed the instant Motion to Dismiss and Memorandum in Support thereof.  ECF Nos. 26, 27.  Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss on March 1, 2024.  ECF No. 30.  Defendant then filed a reply brief in support of its Motion to Dismiss on March 15, 2024.  Accordingly, Defendant's Motion to Dismiss is ripe for review.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1356 (1990)).  Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect.  *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that

the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [their] claim and would entitle [them] to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* However, the plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

## IV. DISCUSSION

### A. Plaintiff's Claims

Plaintiff asserts two claims against Defendant: (1) a putative class action claim for violations of the Virginia Consumer Protection Act of 1977 ("VCPA"), *see* Compl. ¶¶ 68–72; and

(2) an individual breach of contract claim, *see id.* ¶¶ 73–76.[2]  Defendant has moved to dismiss both claims.  *See* Mot. Dismiss 1,[3] ECF No. 26; Def.'s Mem. Supp. Mot. Dismiss ("Mem. Supp.") 10–12, 16–37, ECF No. 27.  Defendant first argues that both of Plaintiff's claims are preempted by the Airline Deregulation Act (the "ADA").  *See* Mem. Supp. 16–21.  Defendant then raises numerous alternative grounds for dismissal of Plaintiff's breach of contract and VCPA claims.  Those grounds include, *inter alia*, that Plaintiff has failed to sufficiently plead a contract, that KLM's environmental goals do not create enforceable obligations, and that Defendant did not make any false statements.  *See id.* at 21–37.

For the reasons outlined below, Defendant is correct that the ADA preempts both claims brought by Plaintiff.  Thus, the Court does not need to reach Defendant's remaining arguments and will instead dismiss Plaintiff's Complaint on ADA preemption grounds.

**B. ADA Preemption**

Defendant opens its briefing by arguing that the ADA preempts Plaintiff's VCPA and breach of contract claims.  *See* Mem. Supp. 16.  The Court therefore begins its analysis by outlining ADA preemption generally, before then turning to consider whether the ADA preempts the specific claims brought by Plaintiff.

  1.  General Principles

Prior to 1978, the federal government regulated interstate airline travel, while the states typically regulated intrastate air travel.  *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 570 (E.D. Va. 2000).  But in 1978, Congress "concluded that competitive market forces,

---

[2] Plaintiff also initially brought an unjust enrichment claim that he has since withdrawn.  *See* Compl. ¶ 77; Pl.'s Mem. Opp'n Mot. Dismiss 7 n.1, ECF No. 30; Def.'s Reply Supp. Mot. Dismiss 6 n.1, ECF No. 31

[3] For these and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

rather than federal regulation, would lead to greater efficiency, lower prices, greater variety, and better quality in the air industry." *Id.* Against this backdrop, Congress passed the ADA. *Id.*; *see* 49 U.S.C. § 40101(a)(6) (noting that one of the purposes of the ADA is to deregulate the airline industry by ensuring "maximum reliance on competitive market forces and on actual and potential competition"). To ensure states would not "undo federal deregulation with regulation of their own," Congress included an express preemption provision within the ADA. *See* 49 U.S.C. § 41713(b)(1); *Cont'l Arilines, Inc.*, 120 F. Supp. 2d at 570.

The ADA's preemption clause reads as follows: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).[4] The Supreme Court has interpreted this clause broadly, holding that the ADA preempts any "actions having a *connection with* or *reference to* airline rates, routes, or services." *Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992) (emphasis added) (internal quotations omitted). This broad interpretation stems from the plain language of the provision as well as the backdrop against which the ADA was passed. *See id.* at 383–86 (focusing on the words "related to," and emphasizing that their ordinary meaning is a "broad one"); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 756 (4th Cir. 2018) (noting that the ADA's preemption provision "express[es] a 'broad pre-emptive purpose' that is consistent with the deregulatory aims of the [ADA]"). That said, the ADA's broad "preemptive reach" will not extend to "state actions that affect airline rates, routes, or services 'in too tenuous, remote, or peripheral a manner.'" *Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570 (quoting *Morales*, 504 U.S. at 390).

---

[4] After the United States Code was reorganized in 1994, the ADA's preemption clause "now appears in Subpart II of the Federal Aviation Act, which includes 'economic regulations' and is administered by the Department of Transportation." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 756 (4th Cir. 2018). No substantive changes resulted from this reorganization. *See id.* at 756 (quoting Pub. L. No. 103-272 (1994)).

The Supreme Court further elucidated the scope of ADA preemption in *American Airlines, Inc. v. Wolens*. *See* 513 U.S. 219, 228–33 (1995). There, the Court held that the ADA's preemption clause, read together with the Federal Aviation Act's (the "FAA") saving clause, "stops [s]tates from imposing their own substantive standards with respect to rates, routes or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232–33. Put differently, the ADA does not preempt private suits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228. However, in such suits, courts are confined "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233; *see Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570–73. Thus, if a plaintiff's state law claim cannot be adjudicated without reference to sources of law external to their agreement with the airline, the ADA will still operate to preempt it. *See Smith v. Comair*, 134 F.3d 254 (4th Cir. 1998) (holding that plaintiff's breach of contract claim was preempted by the ADA because it could "only be adjudicated by reference to law and policies external to the parties' bargain"); *Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570–71 (holding that the plaintiff's state law claims were preempted by the ADA because they could not "'be adjudicated without resort to outside sources of law' and [were], therefore, subject to preemption by the ADA to the extent that they have a connection with, or refer[] to, airline rates, routes, or services").

2. The ADA Preempts Plaintiff's VCPA and Breach of Contract Claims

Keeping the above principles in mind, the Court turns now to consider the parties' substantive preemption arguments. Defendant argues that the ADA preempts both of Plaintiff's remaining claims: a putative class action claim under the VCPA, and a state law breach of contract claim. Plaintiff disagrees, contending that neither claim sufficiently relates to Defendant's routes,

rates, or services such as to justify preemption. On review, the Court agrees with Defendant and holds that both of Plaintiff's remaining claims are preempted by the ADA.

        *a. VCPA*

The Court begins with Plaintiff's VCPA claim. With this claim, Plaintiff alleges that he "saw and relied on [Defendant's] voluntary representations with respect to limiting climate change, through its actions and those made available to its customers." Compl. ¶ 69. Per Plaintiff, these representations were "misle[ading] because [Defendant's] efforts were not consistent with its climate change promises." *Id.* ¶ 70. Consequently, Plaintiff alleges that he and other consumers were harmed by Defendant's "false, misleading, and deceptive practices," *id.* ¶ 71, as they would not have purchased flights from Defendant if they *knew* that Defendant's "efforts were not consistent with its climate change promises." *Id.* ¶ 72.

Defendant begins its argument for dismissal by noting that courts "routinely preempt claims asserting violations of state consumer statutes and other claims—like the VCPA—that sound in fraud [and] relate to airline rates or services." Mem. Supp. 16; *see* Mem. Supp. 16–17 (collecting cases). Defendant therefore argues that because Plaintiff's VCPA claim sounds in fraud and relates to Defendant's rates and services, it is preempted by the ADA. *See* Mem. Supp. 17 (contending that Plaintiff's allegations necessarily relate to Defendant's "rates" because Plaintiff "alleges that he 'paid more for his flight' than he would have otherwise because of [Defendant's] website statements"); Def.'s Reply Supp. Mot. Dismiss ("Reply") 3–4, ECF No. 31 (asserting that Defendant's efforts to make "flying passengers more sustainable" clearly relate to the services it provides since "flying passengers" *is* the "very service it provides to customers"). In response, Plaintiff maintains that his allegations relate only to "voluntary practices," which have no impact on Defendant's "ability to set its rates, routes, or services." Pl.'s Mem. Opp'n Mot.

Dismiss ("Mem. Opp'n") 11, ECF No. 30 (quoting *Morales*, 504 U.S. at 388). Plaintiff further argues that he "is not 'attempting to use the [VCPA] to impose' anything 'not required by the [ADA],'" but "merely 'to enforce a . . . general duty not to mislead or deceive customers.'" Mem. Opp'n 12 (quoting *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012)).

Plaintiff's arguments, while clever, do not carry the day. Synthesizing the preemption principles outlined above, the ADA operates to preempt a state law claim where such claim (1) relies upon the enforcement of state law and (2) "relates to" an airline's "rate, route, or service in more than an overly tenuous, remote, or peripheral a manner."[5] *Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570–71; *see Wolens*, 513 U.S. at 229–30; *Cheatham*, 910 F.3d at 762; *Smith*, 134 F.3d at 257–58. Both requirements are easily satisfied here. To begin, Plaintiff's VCPA claim for false, misleading, and deceptive practices explicitly "rel[ies] upon the enforcement of a state law"—the VCPA. *Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570; *see* Compl. ¶ 68–72. Indeed, the Complaint itself concedes as much. *See* Compl. ¶ 68–72 (indicating that the putative class action claim for misleading practices arises under the VCPA).

The second requirement—that the state law claim "relate[] to" an airline's "rate, route, or service in more than an overly tenuous, remote, or peripheral a manner," *Cont'l Airlines, Inc.*, 120 F. Supp. 2d at 570–71—presents no more of an obstacle than the first as Plaintiff's claim certainly relates to Defendant's services.[6] That is because the crux of Plaintiff's claim is that Defendant's sustainability-related advertisements are misleading, insofar as the services Defendant provides do

---

[5] Of course, there is also the threshold question of whether the regulated entity is "an air carrier" falling within the scope of the preemption provision. *See* 49 U.S.C. § 41713(b)(1). Defendant's arguments assume that this threshold question is satisfied, and Plaintiff does not challenge that predicate assumption, so the Court will accept this element as uncontested.

[6] Because the Court finds that Plaintiff's VCPA claim relates to Defendant's services and is therefore preempted, it does not substantively engage with Defendant's alternative argument that the ADA preempts Plaintiff's VCPA claim because such claim relates to Defendant's rates. *See* Mem. Supp. 17–18.

not boast the level of sustainability Plaintiff perceived Defendant's advertisements to tout. *See* Compl. ¶¶ 1, 16, 18–21, 24–25, 28–34, 54–59, 68–72; Reply 9. The ADA therefore preempts Plaintiff's VCPA claim with respect to Defendant's advertisement of such services. *Cheatham*, 910 F.3d at 762 (noting that the ADA "displaces a state's generally applicable consumer protection laws related to advertising"); *see Hodges v. Delta Airlines*, 44 F.3d 334, 336 (5th Cir 1995) (holding that where the alleged consumer law violation concerns the *manner* of transportation itself, then the law implicates an airline's provision of services); *Wolens*, 513 U.S. at 228 (holding that the plaintiffs' deceptive advertising claim was preempted by the ADA, as the ADA seeks "to leave largely to the airlines themselves, and *not at all* to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services" (emphasis added)); *Wagman*, 47 F.3d at 1166 (holding that the ADA's preemption provision "prohibits state regulation of airline advertising pertaining to services . . . as well as to airline fares"); *cf. Morales*, 134 F.3d at 257 (noting that state laws that restrict an airline's ability to freely advertise its prices are preempted by the ADA).[7]

The Court's conclusion on this issue is further bolstered by the District of Maryland's recent persuasive holding in *Zajac v. United Airlines, Inc. See* 2024 WL 3784535 (D. Md. Aug. 13, 2024). There, the court was presented with a set of facts nearly identical to those here, albeit with respect to a different airline—United Airlines ("United"). *See id.* at *1–2. The court ultimately held that the plaintiff's claim under the Maryland Consumer Protection Act ("MCPA") was preempted by the ADA, writing: "United's alleged misrepresentations [regarding its

---

[7] This Court is aware of only one instance in which a court has reached a different conclusion based upon an analysis of similar facts. *See Berrin v. Delta Air Lines, Inc.*, 2024 WL 3304815, at *1–7 (C.D. Cal. Mar. 28, 2024). *Berrin*, however, is an out-of-circuit decision that largely relies upon Ninth Circuit precedent. *See, e.g., id.* at 5–7. And the Ninth Circuit has taken a narrower view when analyzing certain terms relevant to ADA preemption. *See, e.g., id.* at 6 ("The Ninth Circuit in particular appears to have cabined the definition of 'service.'"). Thus, the Court is neither bound by *Berrin* nor persuaded that its rationale carries weight within the Fourth Circuit.

10

sustainability initiatives] were aimed at inducing consumers to fly United at higher ticket prices. . . . From this, the Court easily concludes that the MCPA claim relates to United's provision of transportation services and is therefore preempted by the [ADA]." *Id.* at *3. The same is true here. Plaintiff contends that Defendant's alleged service-related misrepresentations induced him and others to fly KLM at inflated prices. But such a claim plainly relates to Defendant's advertisement of its services, and is therefore preempted by the ADA. *See Wolens*, 513 U.S. at 228; *Cheatham*, 910 F.3d at 762; *Wagman*, 47 F.3d at 1166; *Zajac*, 2024 WL 3784535, at *3.

In short, Plaintiff's VCPA claim both (1) relies upon the enforcement of state law and (2) relates to Defendant's services and its advertisement thereof. Plaintiff's VCPA claim is thus preempted by the ADA, and will accordingly be dismissed.[8]

### b. Breach of Contract

Plaintiff's second and final claim is a breach of contract claim. *See* Compl. ¶ 73–76; Mem. Opp'n 7 n.1 (noting that Plaintiff "withdraws his claim for unjust enrichment and request for injunctive relief). Therein, Plaintiff alleges that he "entered into a contract with Defendant when he paid for a flight on KLM." Compl. ¶ 73. Plaintiff posits that the terms of this contract "included Defendant's representations that it was acting in accordance to reach the goals of the Paris Agreement and preventing climate change to exceed 1.5 degrees Celsius by 2050." *Id.* ¶ 74. Plaintiff further avers that Defendant breached the contract "because its targets for emissions were not consistent with the Paris Agreement nor with CO2ZERO or emission neutrality." *Id.* ¶ 75. Plaintiff claims that he suffered damages as a result of this breach, "because he spent more money

---

[8] While the ADA certainly ensures a hands-off approach with respect to airlines' marketing practices, it does not leave consumers wholly without recourse against airlines that allegedly engage in misleading tactics. As the *Wolens* Court noted, "the DOT retains authority to investigate unfair and deceptive practices and unfair methods of competition by airlines, and may order an airline to cease and desist from such practices or methods of competition." *Wolens*, 513 U.S. at 823 n.4.

11

by booking a flight on KLM than with another airline that did not make such promises to him." *Id.* ¶ 76.

Defendant, for its part, maintains that Plaintiff's breach of contract claim should be dismissed on ADA preemption grounds. *See* Mem. Supp. 18–19. In support of this position, Defendant first acknowledges that the Supreme Court has "recognized a single, narrow exception to ADA preemption" for "breach of contract claims that enforce an 'airline's alleged breach of its own, self-imposed undertakings.'" *Id.* at 18 (quoting *Wolens*, 513 U.S. at 232–33). However, Defendant notes that "[t]o avoid preemption," a plaintiff's breach of contract claim "must be limited to 'the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.'" *Id.* (quoting *Wolens*, 513 U.S. at 233). Defendant argues that, because Plaintiff's breach of contract claim does not fit within this exception, it must be dismissed as preempted. *See id.* at 19 (" [T]he applicable contract is the [Contract of Carriage, which] does not reference the Paris Agreement or KLM's environmental initiatives, and it contains an integration clause providing that it is the parties' entire agreement. And, KLM's website statements about its aspirational goals and sustainability efforts do not create a binding contract."). In response, Plaintiff argues that Defendant's voluntary environmental initiatives "have no impact on [Defendant's] 'ability to set its rates, routes or services.'" Mem. Opp'n 12. Plaintiff then contends that, because his breach of contract claim is related to Defendant's supposedly misleading "focus on SAFs," it is comparable to the breach of contract claim that was permitted to proceed in *Wolens*. *See id.* ("While the plaintiffs in *Wolens* were allowed to seek relief based on breach of contract claims, this was in the context of '[that] airline dishonor[ing] a term the airline itself stipulated,' similar to Defendant's 'focus on SAFs [which] is misleading because [it] has a negligible effect.'" (first quoting *Wolens*, 513 U.S. at 232–33; and then quoting Compl. ¶ 30)).

Ultimately, the Court finds that Plaintiff's "breach of contract" claim is preempted by the ADA. As an initial matter, the Court notes that the contours of the alleged contract are unclear. Plaintiff avers only that (1) he "entered into a contract with Defendant when he paid for a flight on KLM," Compl. ¶ 73, and (2) the terms of the contract "included Defendant's representation that it was acting in accordance to reach the goals of the Paris Agreement and preventing climate change to exceed 1.5 degrees Celsius by 2050," *id.* ¶ 74. However, Plaintiff does not attach the purported contract to his complaint, nor does he point to any specific contractual provisions that Defendant has allegedly breached. His failure to take either of these steps is problematic. *See Tessler v. NBC Universal, Inc.*, 2009 WL 866834, at *6 (E.D. Va. Mar. 31, 2009) ("The complaint must set forth the provisions of the contract and the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract.").

Moreover, Plaintiff's claim that the terms of the alleged contract "included Defendant's representation that it was acting in accordance to reach the goals of the Paris Agreement" appears to be a reference to Defendant's climate-related advertising. *See* Compl. ¶¶ 16–21. However, it is well-settled that "advertisements . . . are not offers, but merely invitations to bargain." 27 Williston on Contracts § 70:121 (4th ed. 2024). And invitations to bargain are not "to be treated as an offer (which, together with an acceptance, *would* have formed a contract)." *Id.* (emphasis added). In other words, to the extent Plaintiff means to suggest that Defendant's advertising should be incorporated into its contract with him, he is incorrect.[9]

---

[9] To be sure, "there is a very narrow and limited exception to this general rule: Where the offer is clear, definite, explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract." Williston, *supra*, § 70:121. Defendant's advertisements regarding its climate-related efforts, though, are far too open-ended to fall within this "very narrow and limited exception." *See* Compl. ¶¶ 16–21. And regardless, Plaintiff does not even allege that he opted into Defendant's CO2ZERO program that apparently supports these initiatives. *See generally* Compl.

Now, Plaintiff suggests—in his briefing—that he paid money for certain of Defendant's climate-related add-ons. *See* Mem. Opp'n 15–16. But he is plainly prohibited from retroactively amending his complaint in such a manner. *See S. Walk at Broadlands Homeowner's Ass'n, Inc., v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184

13

While the concerns outlined above are significant, an even larger issue remains for Plaintiff: his breach of contract claim is preempted by the ADA *regardless*, as it does not fit within "the narrow exception set forth in *Wolens* for routine breach of contract claims." *Chanze v. Air Evac EMS, Inc.*, 2018 WL 5723947, at *5 (N.D. W. Va. Nov. 1, 2018). For a breach of contract claim to avoid ADA preemption, the claim must be based on a defendant's "breach of its own, self-imposed undertaking" without any "enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 228, 233. Such is simply not the case here. Instead, Plaintiff's breach of contract claim is a thinly veiled repackaging of his VCPA claim, through which he attempts to hold Defendant liable for its allegedly misleading advertising. *Compare* Compl. ¶¶ 69–72 (alleging that (1) "Plaintiff saw and relied on KLM's voluntary representations with respect to limiting climate change," (2) Defendant's efforts were not consistent with its climate changed promises, and (3) Defendant's misleading practices caused harm to Plaintiff and other consumers), *with* Compl. ¶¶ 73–76 (alleging that (1) Plaintiff entered into a contract with Defendant, which contract "included . . . representations that [Defendant] was acting in accordance" with certain climate change related initiatives, (2) Defendant breached this contract by failing to act consistently with its climate-related representations, and (3) Defendant's breach (i.e., its failure to act consistently with its climate change promises) harmed Plaintiff).

Because Plaintiff's breach of contract claim is therefore "an obvious attempt to have [Virginia] 'impos[e] [its] own substantive standards'" with respect to how airlines advertise their services, *Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, at *4 (W.D. Okla. Mar. 15, 2017)

---

(4th Cir. 2013) ("It is well established that parties cannot amend their complaints through briefing or oral advocacy."); *see Travelers Indem. Co. of Conn. v. Lessard Design, Inc.*, 321 F. Supp. 3d 361, 639 (E.D. Va. 2018) (dismissing plaintiff's breach of contract claim because plaintiff's theory was raised "for the first time in its opposition to [the defendant's] motion to dismiss, and because parties cannot amend their complaints through their oppositions"). The Court is instead confined to the Complaint, which includes no such allegations. *See generally* Compl.

14

(quoting *Wolens*, 513 U.S. at 232), *aff'd*, 749 F. App'x 670 (10th Cir. 2018), it is preempted by the ADA. *See id.*; *see also Newman v. Spirit Airlines, Inc.*, 2012 WL 3134422, at *2, *4 (N.D. Ill. July 27, 2012) (holding that the ADA preempted the plaintiff's breach of contract claim based on alleged misrepresentations where the plaintiff was "[u]nable to point to any provision of a contract that defendant has breached"); *cf. Smith*, 134 F.3d at 258–59 (holding that the plaintiff's breach of contract claim was preempted because of, *inter alia*, the contract claim's "practical effect on federal law" in "an area of unique federal [regulatory] concern"); *Chanze*, 2018 WL 5723947, at *5 ("[T]his [c]ourt would not be the first to dismiss a claim for excessive air carrier rates when the claim was merely masquerading as one for breach of contract." (quoting *Schneberger*, 2017 WL 1026012, at *4)).

In short, Plaintiff does not seek to "enforce a specific term of [his] contract" with Defendant. *Schneberger*, 2017 WL 1026012, at *4. Rather, his breach of contract claim is properly read as a repackaged VCPA claim "merely masquerading" as one for breach of contract. *Chanze*, 2018 WL 5723947, at *5. Under such circumstances, the narrow *Wolens* exception does not apply, and Plaintiff's breach of contract claim is preempted by the ADA.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the ADA preempts both of Plaintiff's remaining claims. As a result, the Court need not reach the parties' remaining arguments. Defendant's Motion to Dismiss (ECF No. 26) will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: August 26, 2024
Richmond, Virginia